PHILLIPS, &c.
vs
WINSLOW,
TRUSTEE.
WOODWARD, &c.
vs.
SAME.

---

## Phillips, &c., vs. Winslow, Trustee.
## Woodward, &c., vs. Same.

### APPEAL FROM KENTON CIRCUIT.

Case 50.

PET. EQ

1. The power to pledge the franchises and rights of a corporation implies, as incident thereto, the power to pledge everything that may be necessary to the enjoyment of the franchise.

2. A deed purporting to convey "all the present, and *in future to be acquired property* of the party of the first part, that is to say, their road, made or to be made, including the right of way, and land occupied thereby, together with the superstructure and tracks thereon, and all rails and other materials used therein, or procured therefor, and engines, tenders, cars, tools, materials, machinery, contracts, and all other personal property, right thereto, and interest therein, together with the tolls, rents, or income to be had, or levied thereupon, and all franchises, rights, and privileges of the said parties of the first part, of, in, to, or concerning the same:" Held, to include *cars, wheels, fire wood* obtained for the use of the engines, and *coal* for the use of the machine shop, as things incident to and indispensable to the use and enjoyment of the thing conveyed.

3. Under the Code, (*sec.* 4,) a plaintiff may prosecute his action by equitable proceedings, in all cases, where courts of chancery, before its adoption, had jurisdiction; therefore a party having an equitable lien upon property covered by an elder deed of trust, and which has been sold under the execution of a third person, in disregard of both deeds of trust, may apply to a court of equity for a re delivery of it, if removed, or an order restraining its removal; so, where no sale

PHILLIPS, &c.
vs.
WINSLOW, TRUS-
TEE.
WOODWARD,&c.
vs.
SAME.

has been made, such party has a right to enjoin a sale under such execution in equity.

4. Since the *Rev. Stat.* (*page* 327,) a purchaser, under a sale of the equity of redemption, only acquires a lien upon the property for the repayment of the purchase money and interest; and if at such sale the previous encumbrancer is in possession, or has the right to possession, under the provisions of his deed creating the encumbrance, having a right to apply the profits to the payment of his demand, a court of equity will secure him in the possession, leaving the purchaser of the equity the benefit of his lien.

*Benton & Nixon*, for appellee—

The facts of this case present the following questions—

I. Is the property levied upon and sold, subject to levy and sale?

II. Is it covered by the mortgages executed to the appellees?

III. Has a court of equity jurisdiction over the case, and power to grant relief?

I. We maintain that this property is not subject to levy and sale under a legal proceeding.

1st. Because of the peculiar character of the property.

2d. Because a levy and sale would destroy the franchise.

And first, the property is an entirety. A railroad, properly speaking, consists of a strip of land ranging from 60 to 100 feet wide, usually termed right of way, the road bed, culverts, grades, embankments, bridges, track, sidings, turnouts, stations, depots, and grounds attached thereto, locomotives, cars, shops, &c., and a railway cannot be said to be complete, that is equipped and ready for use, without these various parts and requisites. It is a public highway. (See 2 *B. & Ald.* 548. 21 *Ver. Rep.* 594. *Beekman vs. Saratoga, R. R.* 3, *page* 45.) The public have a right to travel upon it and ship over it, the exercise of which the company cannot prevent. (*Beekman vs. Schenectady Railroad Company,* 2 *American R. R. Cases* 527, 3 *Paige's R.* 45.)

PHILLIPS, &c.
vs.
WINSLOW, TRUS-
TEE.
WOODWARD, &c.
vs.
SAME.

The commonwealth protects and regulates it, gives all its power to the company to condemn lands and materials, and requires the company to use it. (*Wilson vs. Blackbird Creek Marsh Co.* 2 *Pet.* 251.) The company cannot, at pleasure, convert it to any other use—cannot destroy it—must employ it as contemplated by the charter, and to cease to do so would subject it to pass to other hands. "It is true, that the real and personal property, necessary to the establishment and management of the railroad, is vested in the corporation; but it is in trust for the public. The company have not the general power of disposal incident to the absolute right of property; they are obliged to use it in a particular manner, and for the accomplishment of a well-defined public object." (*Inhabitants of Worscester vs. Western Railroad Corporation,* 4 *Metcalf* 564; 1 *American Railway Cases,* 352.)

"That a railroad is for public use, though granted ' to a private company, has been decided, so far as ' we are informed, by every tribunal where the ques-
' tion has been made, and recognized by the silent ' acquiescence of all concerned in this State." (*Enfield Toll Bridge Company vs. Hartford and New Haven Railroad Co.* 17 *Conn. Rep.* 40, 2 *Am. Railway Cases,* 83.)

It is indivisible. No part of it can be taken without destroying the whole. It is only valuable by being preserved undivided and kept in constant use. As well might a stave be taken from the cask, or a wheel from the coach without injury to the property, as to take a car from the railroad.

A car taken from the track is useless lumber. It cannot be of any use to the purchaser, yet it is of such value to the railroad as to render the road not only incomplete but wholly useless without it. The same consequences ensue if creditors are permitted to seize upon and parcel out the materials for repairs, and fuel procured for the use of the road, and without which it could not be operated.

PHILLIPS, &c.
*vs.*
WINSLOW, TRUS-
TEE.
WOODWARD,&c.
*vs.*
SAME.

And secondly, because it would destroy the FRAN-
CHISE. It has already been shown that the property
cannot be sold separately, and we think it equally
clear that the whole cannot be taken under execu-
tion, because a court·of law cannot adjust and settle
the rights of the parties. (*Macon and Western R. R.
Co. vs. Park.* 9 *Georgia R* 377; 2 *Shelf*, 94.)

The company itself could not sell and dispose of
the railway, *a fortiori*, an execution creditor could
not. (1 *Shelf*, 244, 2 *Shelf*, 934.) In the case of *Lee-
dam vs. the Plymouth Railroad Company*, 5 *Watts and
Sergeants' R.* 265, 2 *Am. Railuay Cases*, 233, SER-
GEANT, J, said: "The road could not be taken in ex-
ecution;" and refers to *Ammant vs. the New Alexan-
dria and Pittsburgh Turnpike Railroad Co.* 13 *Serg. and
Rawle*, 210. A sale will not be allowed to destroy
the franchise. (*Osborn vs. Bank U. S.* 9 *Wheat.* 738,
4 *Met.* 564; 1 *American Railway Cases*, 352.)

This court held in the case of the *Winchester and
Lexington Turnpike Co. vs. Vimont*, 5 *B. Monroe*, 1,
that a turnpike road could not be sold even in equity.
The reasons are more numerous, why it could not be
done at law. In that case the remarks of the court
are strikingly appropriate to this, that "the inevita-
'ble effect of such a sale would be to destroy the
'road, and the corporation. It would be a useless,
'ruinous, and unnecessary sacrifice of private inter-
'est, and tend to the destruction of a cherished ob-
'ject of public interest and convenience."

II. Is it covered by mortgage executed by the com-
pany to the appellee?

This property is embraced by the mortgage in ex-
press terms, if the company owned it at the time of
the execution of the instrument.

It is equally evident that it was the design and in-
tention of the parties to the deed, that it should em-
brace all the property that the company should af-
terwards acquire. The expression of the writing is,
that the company sells and conveys "all the follow-
'ing present and future to be acquired property of

PHILLIPS, &c.
vs
WINSLOW,
TRUSTEE.
WOODWARD,&c.
vs.
SAME.

' the said company, that is to say, the road made or to
' be made, including the right of way and land oc-
' cupied thereby, together with the superstructure,
' &c.," engines, tenders, cars, tools, materials and all
' personal property, right thereto or interest therein,
' together with the tolls, rents or income to be had or
' levied thereupon, and all franchises, rights and priv-
' ileges of the said company of, in, to or concerning
' the same."

It is competent for the parties to such a deed of
mortgage, to pledge after acquired property, and
when the writing stipulates to embrace such proper-
ty, it is protected by the deed from creditors.—
(*Mitchell vs. Winslow*, 2 *Story R.* 630—2 *U. S. Dig.*
423.)

Rights in remainder and reversion, possibilities
coupled with an interest, rents, franchises, and choses
in action are capable of being mortgaged; but a
mere naked possibility or expectancy is not. (2
*Story Eq.* 1021; 1 *Powell on Mortg.* 18; *Forman & C.
vs. Proctor & C.* 9 *B. Mon.* 126.)

In the case of *Pierce vs. Emery*, the Supreme Ju-
dicial Court of New Hampshire, at the June term,
1856, upon a mortgage, in all respects similar to the
mortgage to the appellee in this case, held, "that the
' directors of the Concord railroad company were au-
' thorized to make a mortgage, not only of the exist-
' ing property of the road, but of the corporate rights
' and franchises and of the railroad itself as an entire
' thing. That the trustees under such a mortgage
' would hold subsequently acquired property, as an
' incident to the franchise mortgaged, and as an ac-
' cession to the subject of the mortgage. That the
' trustees under the mortgage in this case were enti-
' tled to hold personal property, acquired by the road
' after the mortgage, against subsequent mortgagees
' of the specific property so acquired." Case not yet
reported. (See *Vol. XIII, No.* 39 *of the Legal Intelli-
gencer*, published in Philadelphia.)

PHILLIPS, &c.
vs.
WINSLOW, TRUS-
TEE.
WOODWARD,&c.
vs.
SAME.

The covenant for further assurance contained in the second mortgage, dated April 8th, 1853, gave an equitable lien upon future acquired property. (3 *Powell on Mortg.* 1050.) An undertaking to execute a mortgage was considered to be a good equitable mortgage in *Becket vs. Cordley*, 1 *Bro. C. R.* 353; 2 *Powell*, 434 *C.*

If money be lent, and there is a contract for a mortgage, and the parties dies before making it, the contract gives a lien superior to any specialty creditors. (2 *Powell* 435; 3 *Vesey* 576, 582.)

An agreement for a mortgage raises a specific lien against other creditors of the debtor. (*Burn vs. Burn*, 3 *Vesey* 582; 3 *Powell*, 1050.)

The further assurance required and covenanted for in the second mortgage was executed in the third mortgage, dated June 1, 1855, and which contains the same clauses in relation to future property.

From the foregoing authorities no doubt can exist, that the property subsequently obtained by a railroad company, is bound by and embraced in mortgages previously executed, and most especially where the deed proposes to include it. The equipments of a railroad is only completing it, finishing the work ready for use, and is as clearly an accession to the property as the erection of houses on land or putting machinery into manufactories. (*Gardner vs. Finley & Garlinghouse*, 19 *Barb.* 317) This principle applies with much force to railway-securities.

The deeds of mortgage, then embracing the property, it remains to consider whether it can be levied upon and sold by execution. In determining this question, it becomes necessary to enquire into the character of railway mortgages, or deeds of trust. They seem to be a trust mortgage, as they are deeds of trust with defeasance.

These mortgages, for such for convenience we will term them, differ from ordinary ones in at least two essential particulars, viz: 1. The nature of the

PHILLIPS, &c.
vs.
WINSLOW, TRUS-
TEE.
WOODWARD, &c.
vs.
SAME.

property pledged, and the character of the debt secured. The first, we have considered. 2. The bonded debt of a railway is, in fact a part of its capital. The capital of the company may be said to consist of its stock, bonded on funded debt, and floating debt. The last is the common debt of the company, for which the holders have no lien upon the road, while for the bonded debt the road is mortgaged. In the construction of railways it is usually contemplated to prepare the road bed for the superstructure with the proceeds of the stock, and then out of proceeds of the funded or mortgage debt to procure means to purchase iron, lay the track, and obtain cars, locomotives, &c., necessary to operate the road. This debt is intended to be a permanent one. The bonds evidencing it are not ordinary notes, bonds or bills payable, which the holder expects to have paid at maturity, but are great public securities—designed as permanent investments to be renewed from time to time, the interest or income from which is made payable semi-annually at some banking institution of credit—interest warrants or coupons attached. The surplus capital of this country and of foreign countries seeking such investments, is employed in purchasing these bonds. The entire revenue of the road is irrevocably pledged to meet this interest, and the power of the State is invoked and its honor involved in securing its faithful appropriation.

We submit that this is not a right, interest or property subject to execution. To concede that a court of equity might, in a proper case made out, take this right from the company, does not by any means admit that a legal process could seize upon and dispose of it at the command of the court of law.

We have seen that the property was not subject to levy and sale under execution before it was mortgaged, because of its being a franchise, and it would be thereby destroyed; and because the public was interested therein, and we deny that the execution

PHILLIPS, &c.
*vs.*
WINSLOW, TRUS-
TEE.
WOODWARD, &c.
*vs.*
SAME.

of a mortgage would make the property leviable. The reasons why the property was not leviable before mortgage, are satisfactory and conclusive, and the reasons why it should not be afterwards are more abundant and as certain. The mortgagees are interested now in addition to those before the mortgage, and their interest is of the highest and most sacred character. The law imposes a duty on the company to construct and use the road for its and the public benefit, and now another, the mortgagees' interest has to be subserved. It, the company, can do no act that will militate with the interest of the mortgage. In 4 *Kent* 161, *side page, also* 162, it is laid down that the mortgagor cannot do any act which will impair the security; also the same rulings were had in 2 *John Ch. R.* 148; 2 *Green Chy.* 467, 469, 670. It is now an established rule that where the security of the mortgagor is insufficient, the mortgagor will not be allowed to do that which would directly impair the security. (*King vs. Smith*, 2 *Howe* 242, (*Eng. Ch. R.*) *Atk.* 723 and authorities there cited.

III. Has a court of equity authority to grant relief in the case?

We maintain it has upon three grounds:

1. Because a levy and sale by execution would commit a waste.

2. Because the injury would be irreparable

3. Because it is a case that allows bills QUIA TIMET.

1. The sale under levy would materially affect the security, and it would be prejudiced and detrimented thereby, and "any act to mortgage property by 'which the security is impaired, prejudiced or diminished is waste." (2 *Story Eq. sec.* 851, *also secs.* 914 *and* 919.)

The mortgagor has no right, by the commission of waste, to render the security inadequate. The appropriate remedy for such conduct is by way of injunction. (*Cooper vs. Davis*, 15 *Conn. R.* 556.)

PHILLIPS, &c.
*vs.*
WINSLOW, TRUS-
TEE.
WOODWARD,&c.
*vs.*
SAME.

It seems now to be well settled that the mortgagee may have an injunction even where the debt is not due, if the mortgagor in possession commits waste, or in any way attempts to diminish the value of the property, or if it consists in personality, where he is about to remove it beyond the reach of the mortgagee. (1 *Hillard vs. .Worty, p.* 157 *and* 114; *Clagett vs. Salmun* 5 *Gill and Johnson,* 334, 348–9.)

Threats to commit waste will authorize an injunction. (2 *Carter Ind. Repts.* 473; *Coffin vs. Coffin, Jacob* 70.)

It not being necessary that the party should wait till the waste is actually done. (*London vs. Warfield,* 522, *Dean* 199, 1 *Mad. Ch.* 138.) A mortgagor in possession may exercise the rights of an owner while in possession, provided he does nothing to impair the security. (4 *Kent,* 161, 162; 2 *John Chy.* 148; 2 *Green, Chy.* 467.)

Equity will take jurisdiction of the matter where plaintiffs in sundry executions threaten to seize and sell a railroad with equipments. (*Macon and Western R. R. vs. Parke,* 9 *Georgia R.* 377.) No other than a court of equity possesses power adequate to do justice in such cases. (*Ibid.*)

Equity also will restrain railway companies from appropriating money or capital different from original intentions. (2 *Shelford,* 294; *Maudsley vs. Manchester Canal Co. C. P. Cooper,* 501; *Cunliff vs. Manchester and Bolton Canal Co.* 2 *Russ and M.* 480, note.) And creditors of a mortgagee can be in no better condition than the mortgagor. (*Ayer vs. Bartlett,* 9 *Pick.* 160; *Toplin vs. Parker,* 16 *Pick.* 460.)

2. Because the injury would be irreparable.

What would be the measure of damages to the company, the public and to the bond holders, to have the rolling stock taking from the company? Not the mere value of a car or the whole rolling stock! But as such a proceeding would destroy the security, the franchise, it must necessarily be the worth of the road. The public might not be able to sustain an

PHILLIPS, &c.
vs.
WINSLOW, TRUS-
TEE.
WOODWARD,&c.
vs.
SAME.

action for pecuniary damages for an illegal taking, but the company and bond holders could, and who would be responsible?  The propounding the interrogatory is sufficient to ensure an answer that the injury in such case would be irreparable.  In such cases injunctions are awarded. (2 *Story's Equity* 820; *Mitford's Plea* 148, *note*; 3 *Randolph R.* 394; *Jeremy's Eq.* 350.)

3. Bills *quia timet* are ordinarily applied to prevent wrongs or anticipated mischiefs, &c. (3 *Randolph* 394; *Jeremy's Eq.* 350.)

The jurisdiction is applicable to cases where there is a present right of enjoyment, and to cases where the right of enjoyment is future or contingent.  The object of the bill is in all such cases, to secure the preservation of the property to its appropriate uses; and whenever there is danger of its being coverted to other purposes, or diminished or lost by gross negligence, the interferance of a court of equity becomes indispensable. (2 *Story, Eq. sec.* 827, *also sec.* 851.) When it would destroy the franchise, equity will interfere. (*Osborn vs. Bank U. S.* 9 *Wheat.* 738.)

In *Tift vs. Barton,* 4 *Denio,* it was held that the equity of redemption in mortgaged property is one and inseparable, and that it was irregular to sell it in parcels; however this may be in Kentucky, it is certain that redemption cannot be made of part, but of the whole only. *Ibid.* (*Story's Eq.* 1023 *and notes, top p.* 365, *Powell.*)

Where there is great fear of losing debt from waste bills *quia timet lies*. (11 *Alabama,* 1067; *Walker vs. Miller*; 2 *An. Dig.* 131.)

This brings us to consider the last proposition.

Has the equity of redemption of a railway company been subjected to levy and sale by Statute?

We think not! Incumbered property is made liable to execution by the 15th article of the Revised Statutes, 327; but the act does not embrace railways, nor does it propose to subject property theretofore exempt.  Equities of redemption were not liable to

Phillips, &c.
vs.
Winslow, trus-
tee.
Woodward, &c.
vs.
Same.

levy until rendered so by statute, and it is most obvious that the legislature did not contemplate extending the execution laws to embrace any property or interest not then subject, but simply that the interest or property then subject should remain so, though a mortgage or other lien had been created, and that a levy and sale might still be made, subject to the incumbrance. If, however the property or interest was not liable to execution before an incumbrance was placed upon it, that act would not render it so. Such was the ruling of this court under the act of. 1828, and the present is the same in this respect. (*Collett vs. Jones and Hall*, 2 B. Mon. 19.)

There are many rights and interests that cannot be levied upon, and yet may be mortgaged; a chose in action, franchise, salary, future increase of stock, &c., cannot be levied upon, but may be the subject of mortgage and pledge. (1 *Powell on Mort.* 18; 9 B. Mon. 126.)

*Menzies and Pryor* on the same side—

The charter of this company confers power upon it to borrow money, and to make the mortgages in question to secure the borrowed money. The object of the Legislature was to provide for the construction of a railway from Covington to Lexington for the benefit of the public. The controlling idea in granting such charters is to promote the public interest.

The chancellor has jurisdiction to protect rights conferred by Statute. An injunction has been granted to prevent the use of a road which was made for the purpose of enabling people to shun a toll gate. An injunction has been granted to prevent the auditor from levying a tax. The chancellor will prevent the destruction of property wherever the law cannot afford an adequate remedy. The chancellor will not permit a turnpike road to be sold by virtue of an execution.

PHILLIPS, &c.
vs.
WINSLOW, TRUS-
TEE.
WOODWARD, &c.
vs.
SAME.

This charter gives the company power to mortgage anything which can be the subject of a mortgage, and connected with the operations of the company. Anything which may be sold, can be mortgaged. A right in remainder, a right in reversion, a possibility coupled with an interest, rents, franchises, and choses in action, anything whatever, that has a potential existence, may be sold or mortgaged. The fish that may be caught by the next throw of the net; fruit not yet grown and animals not yet in existence.

A railroad company may assign the power of managing and controlling the road, and the right to receive money as it is made by the road, may be assigned.

If these mortgages are authorized, the next thing to be considered is the equity of redemption. It must be of the entire road, including every piece of property appertaining to it, which is necessary for its convenient use, and not of parcels and separate pieces—a car here, and a wheel there. The purchaser of an equity of redemption, in order to redeem must pay the mortgage liability. He will not be permitted to redeem 25 cords of wood by paying its *pro rata* share of the mortgage claims. The right to redeem, which he may acquire by his purchase, must be enforced in a court of equity, and then complete justice will be done to every person interested in the property. Where a Statute makes an equity of redemption subject to an execution in the hands of a sheriff, the equity court is not ousted. The law remedy is cumulative.

After the condition is broken, the mortgagee may enter and take possession. The mortgagor can be enjoined from cutting timber off of the mortgaged land. The purchaser of the equity of redemption is in no better condition. When a purchaser of the equity of redemption seeks a sale of the mortgaged property, the chancellor will have all incumbrances removed before he will order a sale. Under our statute, the purchaser of an equity of redemption in

PHILLIPS, &c.
vs.
WINSLOW, TRUS-
TEE.
WOODWARD,&c.
vs.
SAME.

a chattel is bound to return the property, but is not responsible for the value of its use.

If the cars of this company are to be taken by its execution creditors, the main purpose of the legislature, in granting this charter will be defeated. A railway from Covington to Lexington, for the benefit of the public, was the object. This railway could not have been made if it had not been for these mortgages. These mortgages were made under the powers conferred upon the company by the charter. If these bond-holders—mortgage creditors to the amount of $2,000,000—are not permitted to have the road used as a railway, the purpose of the legislature will be defeated and the bond-holders will be irreparably injured. Equity would afford the execution creditors a complete remedy, if they would seek it in the right way, without defeating the purposes of the charter and without doing irreparable mischief to the bond-holders—the mortgagees.

We append a list of authorities, upon which we rely in support of our positions.

(*Story's Eq. Juris. vol.* 2, *secs.* 918, 919, 1015, 1023, *and* 1030; 1 *Vesey*, 147; 1 *Johns. Ch. Rep.* 615; 5 *Johns. Ch. Rep.* 101; 9 *Wheaton*, 758; *Revised Statutes*, 327; 5 *B. Monroe*, 2; 2 *Kent*, 468 *and* 475, (*side*) *and notes*; *Angel & Ames on Cor.* 174; *and* 4 *Kent*, 162–3, (*side*.)

Judge SIMPSON delivered the opinion of the court.                    Oct. 15, 1857.

These actions in equity were brought by Winslow as trustee. His title to the property in contest is derived under two deeds, executed to him by the Covington and Lexington railroad company, one bearing date the 8th of April, 1853, and the other the 1st day of June 1855. The deeds were executed to enable the corporation to borrow money. They both purport to convey to the trustee, to secure the payment of the money borrowed, "all the ' present and *in future to be acquired* property of the ' parties of the first part, that is to say: their road ' made or to be made, including the right of way

PHILLIPS, &c.
vs.
WINSLOW, TRUS-
TEE.
WOODWARD, &c.
vs.
SAME.

' and land occupied thereby, together with the super-
' structure and tracks thereon, and all rails and other
' materials used therein, or procured therefor, and en-
' gines, tenders, cars, tools, materials, machinery,
' contracts, and all other personal property, right
' thereto, or interest therein, together with the tolls,
' rents, or income to be had or levied thereupon, and
' all franchises, rights, and privileges of the said
' parties of the first part of, in, to, or concerning the
' same."

The corporation had made a previous deed on the
same property, in precisely the same language, to
John A. Stevens and Charles N. Fearing, to secure
the payment of the bonds of the company to the
amount of four hundred thousand dollars.    The
grantees in this first deed, therefore, were invested
with the legal title to the property embraced in the
deeds.

The defendants in the action, being judgment
creditors of the corporation, sued out their respec-
tive executions, and caused them to be levied on two
freight cars of the company, then on the track, eight
car wheels at the car shop, twenty-five cords of fire
wood obtained for the use of the engines and loco-
motives, and five hundred bushels of stone coal at
the machine shop.   The proceedings under Wood-
ward's execution were enjoined before a sale was
made by the officer, but the property was sold under
the execution in favor of Phillips and Jordan, &c.,
and was purchased by them.   Its removal was en-
joined in the action in which they were defendants,
and the injunctions in both cases were sustained and
perpetuated by the judgment of the court below on
final hearing.

The first and most important question that arises
in these cases is do the deeds to the plaintiff include
the property upon which the executions of the de-
fendants were levied?   If they do not, he has no
right or title to the property, and cannot maintain his

PHILLIPS, &c.
vs.
WINSLOW, TRUS-
TEE.
WOODWARD, &c.
vs.
SAME.

actions even although the property was not subject either to levy or sale.

The plaintiff did not allege in his petition in either case, that the property belonged to the railroad company at the time the deeds were executed, it may therefore be assumed that it has been subsequently acquired by it.

The company, by its charter, was authorized to borrow money, and execute such evidences of indebtedness as might be deemed proper, and pledge the property, franchises, rights and credits of the corporation for any loan, liability, or contract which it had made, or should make.

We do not deem it necessary to decide in this case whether, under ordinary circumstances, a mortgage on subsequently acquired property would be valid, or pass any title to the property. These deeds were made under the power conferred by the charter, and their validity and effect have to be determined by the provisions of the charter, and not by the general law upon the subject. The object in conferring this power on the corporation was to enable it to borrow money for the purpose of constructing the road, and putting it into full and complete operation. The power to pledge the franchises and rights of the corporation implies, as incident thereto, the power to pledge every thing that may be necessary to the enjoyment of the franchise, and upon which its real value depends. It could not have been intended by the legislature merely to confer a power to pledge the naked franchise, which belonged to the corporation, without the right also to pledge such things as were incident and indispensable to its use and enjoyment, and without which it would be of no value whatever. A power of such limited operation would have been of no avail, in the then condition of the road, and would not have accomplished the object contemplated by the legislature and the company. The corporation was authorized to pledge not only the existing property of the road, but the corporate

1. The power to pledge the franchises and rights of a corporation implies, as incident thereto, the power to pledge everything that may be necessary to the enjoyment of the franchise.

PHILLIPS, &c.
       vs.
WINSLOW, TRUS-
       TEE.
WOODWARD,&c.
       vs.
     SAME.
rights and franchises, and the railroad itself, as an entire thing. To render such a pledge effectual it was necessary that it should embrace all such future acquisitions of the corporation as were proper accessions to the thing pledged, and essential to its enjoyment, and the power thus to extend it was implied in the grant itself. Of what value would the railroad be without the cars on the road, and the fuel necessary to run them? The bonds of the company were redeemable in thirty years. To secure their payment, the road of the company made and completed, including the right of way and the land occupied thereby, with the superstructure and track thereon, and all the rails and other materials used and to be used therein, and all engines, cars, tools, machinery, and all other personal property then owned, or which might be afterwards acquired by the company, together with all franchises, rights, and privileges of the company to use the road and collect tolls and freight, were conveyed in pledge by the company. Now it is evident that as the pledge was to continue during many years, new cars and engines and materials of different description would from time to time become necessary, and fuel would all the time have to be purchased as it was needed. These articles were therefore included in the deed, and as the business of the road could not be carried on without them the power to pledge the road itself, with its profits and privileges, and the rights and franchises of the corporation, carried along with it the implied authority to pledge all such future acquisitions of the company as were necessary and proper to the full and complete use and operation of the road itself.

We are therefore of the opinion that the property upon which the executions were levied was embraced by the deeds to the plaintiff, whether it belonged to the company at the time the deeds were executed or was subsequently purchased by it.

2. A deed purporting to convey "all the present, and *in future to be acquired property* of

The next question to be considered is the jurisdiction of a court of equity in these cases, and its power to grant relief by enjoining the defendants from proceeding to dispose of the property under their executions. It is contended that they had a right to levy their executions on the equity of redemption, and to make sale thereof, and that for any wrong committed by them the plaintiff had an adequate remedy at law.

The plaintiff's right to the property was merely equitable, inasmuch as it was covered by an elder deed of trust than those under which he claimed. Consequently, before the adoption of the Code of Practice, he could not have maintained an action at law against the defendants, but would have been compelled to resort to a court of chancery for relief; and under the Code a plaintiff may prosecute his action by equitable proceedings, in all cases where courts of chancery before its adoption had jurisdiction. (*Sec.* 4, *Code Practice.*)

In one of these cases the property had been sold and purchased by the plaintiffs in the execution. In making the sale the deeds of trust had been disregarded, and the absolute right to the property and not merely the equity of redemption therein, was sold by the officer. By this act, the levy itself became *tortious* by relation, and the sale was illegal. If the plaintiff had been invested with the legal title to the property he could have maintained an action of replevin or detinue against the purchaser for its recovery. (*Fugate vs Clarkson*, 2 *B. Mon.* 42.) As he only had an equitable title to it, he had a clear right to apply to a court of equity for relief, and was entitled to a judgment for a re-delivery of the property, if it had been taken into possession by the defendants, or to an order restraining them from a removal of it, if it had not been removed by them.

In the other case the property had not been sold, but the plaintiff alleged that the defendant had levied an execution upon it, and would sell it, unless

PHILLIPS, &c.
vs.
WINSLOW, TRUSTEE.
WOODWARD,&c.
vs.
SAME.

the party of the first part, that is to say, their road, made or to be made, including the right of way, and land occupied thereby, together with the superstructure and tracks thereon, and all rails and other materials used therein, or procured therefor, and engines, tenders, cars, tools, materials, machinery, contracts, and all other personal property, right thereto, and interest therein, together with the tolls, rents, or income to be had, or levied thereupon, and all franchises, rights, and privileges of the said parties of the first part, of, in, to, or concerning the same:"— Held, to include *cars, wheels, firewood* obtained for the use of the engines, and coal for the use of the machine shop, as things incident to and indispensable to the use and enjoyment of the thing conveyed.

3. Under the Code, (*sec.* 4,) a pl'tff may prosecute his action by equitable proceedings, in all cases, where

PHILLIPS, &c.
vs.
WINSLOW, TRUS-
TEE.
WOODWARD, &c.
vs.
SAME.

courts of chan-
cery, before its
adoption, had
jurisdiction;
therefore a par-
ty having an
equitable lien
upon property
covered by an
elder deed of
trust, and which
has been sold
under the execu-
tion of a third
person, in disre-
gard of both
deeds of trust,
may apply to a
court of equity
for a re delivery
of it, if remov-
ed, or an order
restraining its
removal; so,
where no sale
has been made,
such party has a
right to enjoin a
sale under such
execution in
equity.

restrained by the chancellor. As the plaintiff had a right to come into a court of equity for relief, on the ground that he had only an equitable right to the property, and as the defendant according to the allegations contained in the petition, was about to commit an illegal act, the court had the power to restrain him, and thereby prevent its commission. A court of law only affords relief, after the wrong has been done, but a court of equity will interpose, and prevent its commission, where it has jurisdiction of the case, and the act if committed would be evidently wrongful and illegal. The defendant did not propose to sell merely the equity of redemption, but to sell the property itself.

But we are of the opinion that in these cases, the court had jurisdiction upon the ground, that the act complained of was not only in violation of the plaintiff's right, but it was of a character which might produce great or irreparable injury to the plaintiff, and great inconvenience to the public.

If executions can be levied upon one car, they can be levied upon all the cars upon the road. If they can be levied upon part of the fuel, they can be levied upon all of it, and thus the business of the road may be entirely suspended. Such a result would not only produce great injury to the plaintiff, but great inconvenience to the public. It would prevent all travel upon the road, and effectually destroy its business and its usefulness. If the property was subject to execution, the plaintiff would have no right to complain, let the consequences be what they might; but not being subject to execution, he has a clear right to apply to the chancellor for an injunction to prevent an act which might be productive of so great an injury; the right to redeem the property being a right that belongs to the corporation, is liable for its debts; but the defendants were not attempting to sell this equity of redemption, but the property itself, which they had no right to do.

Where encumbered property, is sold under execution, courts of equity have the control of it, and the power to make all needful orders for its preservation. Since the adoption of the Revised Statutes the purchaser, under a sale of the equity of redemption, only acquires a lien upon it, for the re-payment of the purchase money and interest. (*Revised Statutes, page* 327.) If then one of the previous incumbrancers should be in the possession of the property, at the time of the sale of the equity of redemption, under the provisions of the deed creating the incumbrance, having a right under the same to apply the profits to the payment of his demand, a court of equity having the power to control the property would secure him in the possession and enjoyment of it, leaving to the purchaser the benefit of the lien he had acquired under the sale of the equity of redemption.

Here the plaintiff was substantially in the possession of the road through his agents the officers of the company, or if not in the actual possession of it, he had the right to it by the terms of the deeds creating the incumbrance, and also the right to appropriate the profits of the road to the payment of the debts of his *cestui que trusts*. If therefore the defendants had sold merely the equity of redemption, or in other words had sold the property subject to the previous incumbrances, the chancellor would have had a right under the discretionary powers vested in him by the statute to have prevented its removal by the purchaser. But as the defendants had under one execution sold the property, without any regard to the incumbrances upon it, and were proceeding to do the same thing in the other case, the plaintiff had an undoubted right to the relief granted him by the judgment of the court below.

Wherefore, the judgments in both cases are affirmed.